[No. 6754–4–II.   Division Two.   May 6, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v.
ROBERT M. FREY, *Appellant.*

*C. Michael McLean,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for respondent.

ALEXANDER, J.—The defendant appeals his conviction of indecent liberties from the Cowlitz County Juvenile Court. We affirm.

On December 31, 1981, Carol Doe entered an emergency support shelter with her three young children, Berta, Duncan, and Robert Doe.[1] After the family had been at the support shelter for 8 days, 6–year–old Berta approached Jackie Lorati, the children's director at the shelter, and asked her if she wanted to know Berta's "secret." Lorati said "yes" and Berta told her, "I got a hickey." When Lorati asked the child if she knew what a "hickey" was, Berta said, "You just suck and suck real hard."

After further questioning over a period of several hours, Berta revealed that she had other hickeys on her breasts, stomach, and vaginal area.[2] Berta indicated during this conversation that her "boyfriend" had given her the hickeys. Although she indicated her boyfriend's name was "Bobby," she said she did not know his last name or where he lived. She said the events occurred in Bobby's bedroom at different times. Lorati examined Berta for marks but found none. She described Berta as a quiet child, of probably low average mental ability, who would often suck her thumb and curl up in a fetal position.

Approximately 4 days later, Jenny Senn, a caseworker for the State of Washington Department of Social and Health Services, and Deputy Sheriff Mike Riley interviewed Berta. They gave her two fully clothed anatomically correct dolls, one male and one female, and asked the child to demonstrate what happened at "Bobby Frey's house." Berta unclothed the dolls and demonstrated explicit sexual acts with the dolls consistent with those earlier described by her.

Two days later Lorati and Senn again interviewed Berta. Playing the part of Bobby, Berta play–acted various sexual acts, including oral sex. Senn indicated that Berta was not very verbal about the events, but that she would demon-

---

[1] We have used a fictitious surname for the children and their mother.

[2] The child actually used more childish terms to identify her breasts and stomach. She pointed to her vaginal area.

strate and would say "one word things."

On January 12, Deputy Riley first interviewed Bobby Frey, a juvenile,[3] who had previously baby–sat with Berta. Frey made a handwritten statement, in which he indicated that he had no idea why Berta was accusing him of these acts. He indicated in this statement that Berta had done "weird things" from time to time, such as spreading her legs and asking Bobby to wrestle. Frey told Deputy Riley that he thought Berta's father had been molesting her.

On February 2, Frey admitted in a tape–recorded statement given to Deputy Riley that he had touched Berta with his finger near Berta's vaginal area, but only on one occasion, which he said was some 6 months before the interview.

Bobby Frey was charged with indecent liberties, and the case proceeded to a bench trial in juvenile court. The trial judge interviewed Berta and determined that she should not be permitted to testify because, in his opinion, she was unable to understand the significance of the oath.[4] However, Senn and Lorati testified, without defense objection, concerning the statements Berta had made to them.

The trial court ruled, this time over defense objection, that the contents of Berta's statements were sufficient to establish the corpus delicti of the crime, thus supporting admission of Frey's statements. In making its ruling, the trial court explained that the child's statements to Senn and Lorati were admissible, pursuant to RCW 9A.44.120, as statements of an "unavailable" child witness.

Frey testified at trial that he had baby–sat with Berta several times, but that he had never sat with her alone. Berta's mother confirmed that Frey had baby–sat with Berta, but was unsure whether this occurred at Frey's resi-

---

[3]The record does not disclose Frey's age.

[4]The court did not find that she appeared "incapable of receiving just impressions of the facts, . . ." which would be a basis for finding her incompetent to testify. RCW 5.60.050. *See State v. Ryan,* 103 Wn.2d 165, 173, 691 P.2d 197 (1984).

dence or whether Frey had baby–sat with Berta alone. Frey was found guilty of indecent liberties and appeals the conviction to this court.

We deal initially with Frey's contention that RCW 9A.44.120,[5] which permits hearsay statements of children under 10 years of age to be admitted into evidence in certain cases, is unconstitutional as a violation of the confrontation clauses of the Washington and United States Constitutions.[6]

This precise question has been considered and determined adversely to the defendant's position. In *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984), the Washington Supreme Court ruled that RCW 9A.44.120 facially conforms to the right of confrontation. The court in *Ryan* pointed out that neither the federal nor Washington confrontation clause has been read literally, "for to do so would result in eliminating all exceptions to the hearsay rule." *State v. Ryan*, 103 Wn.2d at 169, citing with approval *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

---

[5]RCW 9A.44.120 provides, in part, as follows:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

[6]The sixth amendment to the United States Constitution provides, in part, as follows:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . ."

Const. art. 1, § 22 (amend. 10) provides:

"In criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face . . ."

Where evidence does not fall within a firmly rooted hearsay exception, there must be a showing of particularized guaranties of trustworthiness. *Ohio v. Roberts,* 448 U.S. at 66. Although the court in *Ryan* conceded that RCW 9A.44.120 did not constitute a "firmly rooted hearsay exception," it held that the statutory requirements for admission of statements "comport with the general approach utilized to test hearsay against confrontation guaranties." *Ryan,* 103 Wn.2d at 170. The court noted with approval that RCW 9A.44.120 requires: (1) a determination "'that the time, content, and circumstances of the statement provide sufficient indicia of reliability . . .'"; and (2) that either the child testify or a showing that the child is unavailable. *Ryan,* 103 Wn.2d at 170. It is clear that RCW 9A.44.120 does not violate either the Washington or the federal confrontation clause.

Frey asserts that the trial court could not consider Berta's hearsay statements to Senn and Lorati as independent evidence sufficient to establish the corpus delicti for the admissibility of Frey's statements to Riley. While he does not dispute that Berta was "unavailable," he argues that the statements were inadmissible because they lacked corroboration as required by RCW 9A.44.120(2)(b).[7]

We note that defense counsel did not raise this alleged lack of corroboration when Senn and Lorati testified. The requirement that an unavailable child witness's testimony be corroborated is only a statutory requirement. RCW 9A.44.120(2)(b). The corroboration requirement is a creation of the Legislature, and it is in addition to the constitutional requirement that the statements contain indicia of reliability. *See State v. Ryan,* 103 Wn.2d at 174. Because the requirement of corroboration is not mandated by either the United States or the Washington Constitution, we will not consider Frey's assignment of error where he did not object at trial to the lack of corroboration of the child's

---

[7]There is no dispute over the fact that the only corroboration of Berta's statements to Senn and Lorati is Frey's statements to Riley.

statements. RAP 2.5(a).

The requirement that the statements contain indicia of reliability, however, is a constitutional requirement as we have already noted. We will, therefore, consider Frey's argument that the child's statements were unreliable, notwithstanding his failure to object at trial. The appellate court may consider a "manifest error affecting a constitutional right" even if it was not raised at trial. RAP 2.5(a).

As discussed above, the court must find that "the time, content, and circumstances of the statement provide sufficient indicia of reliability . . .'" before statements are admissible under RCW 9A.44.120(1). *Ryan*, 103 Wn.2d at 170. In *Ryan*, the court considered the factors set out in *State v. Parris*, 98 Wn.2d 140, 654 P.2d 77 (1982) and *Dutton v. Evans*, 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) to determine reliability. *Ryan*, 103 Wn.2d at 175–76. Under *Parris* the following factors are significant: (1) Whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statement; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness. *Parris*,[8] 98 Wn.2d at 146. Considering these factors, Berta's statements are admissible. The record reveals no evidence that would suggest a motive for Berta to lie to the two witnesses who were relatively unknown to her. Further, her low mental development suggests that she would be less likely to be devious and fabricate the incidents. "A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of [her] experience." *See* Comment, *Sexually Abused Infant Hearsay Exception: A Constitutional*

---

[8]The court in *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982) approved these factors as guidelines in determining the trustworthiness of extrajudicial statements, following *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978). This division recently utilized these *Alvarez* factors, in combination with the factors set forth in *Dutton v. Evans*, 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970), in *State v. Edmondson*, 43 Wn. App. 443, 717 P.2d 784 (1986).

*Analysis,* 8 J. Juv. L. 59, 67 (1984). Finally, Berta repeated the story consistently to more than one person on three occasions, and she made the statements spontaneously without prompting.

In *Dutton v. Evans,* these factors were found significant in determining the reliability of the hearsay statements: (1) The statement contains no express assertion about past fact, (2) cross examination could not show declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement are such that there is no reason to suppose the declarant misrepresented defendant's involvement. *Dutton,* 400 U.S. at 88–89.

■ Again, there were no circumstances to suggest that Berta would have misrepresented the defendant's involvement. While Berta's low intelligence may have affected her ability to express herself, it would not necessarily have affected her memory or recollection. Although Berta's demonstrations concerning what happened at Frey's house would appear to be nonspontaneous, express assertions about past facts, her statements about the "hickeys" would describe a present state. Concededly, cross examination of Berta may have been an adequate way to reveal any suggested lack of knowledge. While the *Dutton* factors do not indicate reliability as firmly as the *Parris* factors, the determination of whether statements are admissible under the child abuse hearsay exception is within the sound discretion of the trial court. *State v. Slider,* 38 Wn. App. 689, 698, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985). On balance, an analysis of the *Parris* and *Dutton* factors support the trial court's decision that Berta's statements were reliable. We hold, therefore, that the trial court did not abuse its discretion in admitting these statements into evidence.[9]

[9]We are not unmindful that the court in *Ryan* stated that a child witness's competency is a precondition to the admission of his or her hearsay statements. *Ryan,* 103 Wn.2d at 173. It may be argued that because Berta was not permitted

Finally, Frey argues that the trial court erred in admitting and considering the incriminating statements which he made to Deputy Riley.[10] He contends that the statements

to testify due to her inability to understand the oath, the admission of her statement violates the confrontation clauses of the United States and Washington State Constitutions.

Our reading of *Ryan*, however, indicates that the court was discussing incompetency based on the "inability [of child witnesses] to receive just impressions of the facts concerning the event." *Ryan*, 103 Wn.2d at 173. The court noted, "If the trial court had examined the children and found them incompetent on *this basis*, their testimony would be too unreliable for admission." (Italics ours.) *Ryan*, 103 Wn.2d at 173. Later the court indicated that "[t]he trial court did not determine whether the children were competent when they made the statements. If they were not, their statements must be excluded as being unreliable." *Ryan*, 103 Wn.2d at 174.

Here, as we have noted, Berta's statements were excluded because she was unable to understand the nature of the oath. The fact that she was unable to understand the nature of the oath and the significance of the court proceedings does not directly bear on the reliability of her statements at the time they were made. The court in *Ryan* emphasized that reliability is determined at the time the statements are made: "The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." *Ryan*, 103 Wn.2d at 174, quoting *Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir. 1979). Justice Dimmick, in her concurring opinion in *Ryan*, indicated that the majority opinion could be misconstrued as implying that present incompetency presumes incompetence or unreliability at the time the statement was made:

> But one does not necessarily follow from the other. Young children present special problems as witnesses because of their short memories and possible traumatic reaction as victims. The statute has been written to recognize the possible validity of a child's earlier statements (not unlike the hearsay exceptions allowed for excited utterances or present sense impressions).
>
> . . . A finding of incompetence at time of trial would not invalidate an out–of–court statement by a child which had the mark of reliability at the time it was made.

*Ryan*, 103 Wn.2d at 182–83 (Dimmick, J., concurring). *See also State v. Slider*, 38 Wn. App. 689, 694 n.2, 688 P.2d 538 (1984) ("[T]he fact that Trina may have been incompetent to testify at the time she made her declaration or at the time of trial is not dispositive with respect to the admission of the hearsay declarations, provided the circumstances sustain the theory upon which the exception was founded."), *review denied*, 103 Wn.2d 1013 (1985). *See also State v. Gitchel*, 41 Wn. App. 820, 827, 706 P.2d 1091 (1985) (where the court held that the statements of a child victim were reliable under RCW 9A.44.120(2)(b), even though the child was properly found incompetent to testify).

[10]The defendant raises no issue concerning the voluntariness of his state-

were not admissible because the State had not established prima facie proof of the corpus delicti of indecent liberties at the time the statements were admitted. He cites *State v. Hamrick,* 19 Wn. App. 417, 419, 576 P.2d 912 (1978), in which the court said:

> The corpus delicti must be shown by some independent evidence before the admissions of the defendant may be utilized, but when such independent evidence is adduced, the admission may be considered in combination with other facts to establish the defendant's guilt beyond a reasonable doubt. The independent evidence is sufficient if it prima facie establishes the corpus delicti.

At the time Frey's statements were offered into evidence, the court had already received evidence of the child's statements without objection. Therefore, the trial court had before it independent evidence that established prima facie proof of the corpus delicti of indecent liberties. The trial court did not err in admitting Frey's statements.

The defendant's conviction for indecent liberties is affirmed.

REED, A.C.J., and PETRICH, J., concur.

---

ments, having specifically stated through his counsel that he was "going to waive the 3.5 hearing for the record."