[No. 54986-9. En Banc. May 4, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. GERALD
DOUGLAS JONES, *Petitioner.*

*Edward L. Dunkerly* and *Ihringer & Dunkerly,* for petitioner (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for respondent.

*Jesse Wm. Barton* on behalf of Washington Appellate Defender Association, amicus curiae for petitioner.

*Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *Seth Aaron Fine, Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amici curiae for respondent.

DURHAM, J.—Under Washington's child victim hearsay statute, RCW 9A.44.120, a child's description of an "act of sexual contact performed with or on the child by another" is admissible as hearsay evidence in a criminal case if the

statement bears sufficient indicia of reliability, and, when the child is unavailable as a witness, "there is corroborative evidence of the act." At issue in this case is the application of the corroboration requirement to the facts presented.

## I

The State commenced this prosecution against Gerald Jones in December 1985, charging that Jones had committed indecent liberties by having sexual contact with his daughter Sonja, then 4 years old. In February 1986, the State served notice on Jones' trial attorney that it would seek to introduce into evidence statements Sonja made to her mother, a friend of her mother, and a Washougal police officer, describing sexual contacts she had experienced with Jones. As grounds for admissibility, the State relied on RCW 9A.44.120:

> Admissibility of child's statement—Conditions. A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:
> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
> A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

Sonja first described sexual contacts with Jones in a conversation with her mother, Robin Stein, on November 26,

1985. Sonja told Stein, apparently without prompting, that while she slept with Jones in a trailer belonging to one of Jones' friends, he had fingered her vagina. Jones denied this accusation when Stein confronted him with it.

About a week later, in the presence of Jones and others, Sonja told Stein: "Mommy, I have something nasty to tell you. . . . Daddy made me go up and down on his Georgie [Sonja's word for penis]". According to Stein and Teena Young, the other adult present, Jones reacted to this allegation by abruptly interrupting Sonja and yelling at her for wetting her bed. Sonja repeated the allegation when Stein and Young questioned her about it the next morning.

Stein and Young took Sonja to a physician for examination. The physician observed "a bit of redness" in Sonja's vaginal area, but found "no evidence of any penetration or other sexual abuse". Nevertheless, he referred the matter to the Washougal police for investigation.

Following up on the physician's referral, Washougal police officer Carol Buck conducted two interviews with Sonja, during which Sonja said Jones had "put his Georgie in me", and that the "Georgie" "hurts whenever it's inside". Sonja also sat on Buck's lap to show how she sat on her father's lap on the toilet. At a third interview a month later, Sonja demonstrated this sexual contact using anatomically correct dolls and told Buck that Jones "put[] pee" on her chest.

At this later interview, Sonja volunteered a new allegation that, at Jones' instance, she "pee[d] in [Jones'] mouth and he put it in the toilet". Using the dolls, Sonja then demonstrated how Jones put his head towards her crotch while she urinated and held his penis in her fist.

Having established that Sonja's statements were reliable, and that Sonja was unavailable to testify at trial, the State next sought to satisfy the final requirement for admissibility under RCW 9A.44.120, that "there is corroborative evidence of the act". In addition to physical and psychological

evidence of abuse,[1] the State produced evidence that Jones found sexual gratification in having a woman or girl urinate on him.[2] Stein testified that on several occasions Jones had asked her to urinate on his face, and that she had done so "a couple of times". Another woman who once lived with Jones said he had asked her during sex to urinate on him "like a little girl would do." A third witness testified that Jones lived with her family when she was between the ages of 2 and 7, and that several times during that period she urinated in Jones' mouth at his request.

The trial court ruled that the State had failed to satisfy the statutory requirement of corroboration. The observations offered as physical and psychological evidence of abuse the court found to be "not in themselves corroborative, absent other independent evidence." The testimony about Jones' prior urolagnial experiences, the court held, "cannot be used as corroboration of the act" because the testimony "would not be admissible in the state's case in chief." Finding further that "the practical effect of this order is to terminate the State's case", the court dismissed the prosecution.

On the State's appeal, a divided panel of the Court of Appeals reversed and remanded. *State v. Jones,* 50 Wn. App. 709, 750 P.2d 281 (1988). The majority faulted the trial court for "refus[ing] to consider" the evidence of Jones' prior urolagnial experiences on the issue of corroboration. Judge Petrich, in dissent, argued that this evidence is irrelevant to the question of whether Jones engaged in urolagnia with Sonja, and thus that Jones' prior urolagnial experiences "did not serve to corroborate the actual act of abuse committed in this case." *Jones,* at 716 (Petrich, J.,

---

[1]Stein and Young described the redness around Sonja's vaginal area and reported that Sonja had experienced a personality change after Jones was arrested.

[2]The State refers to "the type of sexual activity where one party urinates on another" as "golden showers". We will refer to the practice as "*urolagnia*". *See Webster's Third New International Dictionary* 2522 (1981).

dissenting). We granted Jones' petition for review. 110 Wn.2d 1027 (1988).

## II

Jones' first contention is that because the urolagnial evidence would not be admissible at trial,[3] it is not competent corroborative evidence under RCW 9A.44.120. We disagree.

■ It is well established that a trial court is "not bound by the Rules of Evidence" when it determines questions concerning the admissibility of evidence. ER 104(a); *see also* ER 1101(c)(1), (3). Thus, we have held that the Rules of Evidence are inapplicable at pretrial hearings on a child's competency to testify. *State v. Leavitt,* 111 Wn.2d 66, 70, 758 P.2d 982 (1988); *see also State v. Tuffree,* 35 Wn. App. 243, 248, 666 P.2d 912, *review denied,* 100 Wn.2d 1015 (1983). The determination under RCW 9A.44.120 that "there is corroborative evidence of the act" of sexual contact alleged by a child against a criminal defendant similarly may be made free from formal evidentiary constraints.

Since the inadmissibility of evidence in the State's case in chief does not preclude its use in connection with the preliminary determination of corroboration under RCW 9A.44.120, the trial court's refusal to consider the evidence of Jones' prior experiences with urolagnia on the issue of corroboration was error. Thus, we agree with the Court of Appeals that the trial court's order of dismissal should be vacated. Rather than simply remanding the case, however, we believe that a thorough review of the corroborative value of the State's evidence is warranted.

In deciding if there exists sufficient "corroborative evidence of the act" to admit into evidence hearsay statements of a child victim of sexual abuse, it is necessary to understand the corroboration requirement's function in relation to the general purposes of the child victim hearsay statute. RCW 9A.44.120 is principally directed at alleviating the difficult problems of proof that often frustrate prosecutions

---

[3]We express no opinion on the correctness of this proposition.

for child sexual abuse. Acts of abuse generally occur in private and in many cases leave no physical evidence. Thus, prosecutors must rely on the testimony of the child victim to make their cases. Children are often ineffective witnesses, however. Feeling intimidated and confused by courtroom processes, embarrassed at having to describe sexual matters, and uncomfortable in their role as accuser of a defendant who may be a parent, other relative or friend, children often are unable or unwilling to recount the abuses committed on them. In addition, children's memories of abuse may have dimmed with the passage of time. For these reasons, the admissibility of statements children make outside the courtroom, and especially statements made close in time to the acts of abuse they describe, is crucial to the successful prosecution of many child sex offenses. *See generally* Joint Hearings on SB 4461 before the Washington State Senate Judiciary Comm. and Washington State House Ethics, Law & Justice Comm., 47th Legislature (Jan. 28, 1982); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum. L. Rev. 1745, 1749–53 (1983).

RCW 9A.44.120 is responsive to the prosecutor's need for such hearsay evidence, making it available when it would not otherwise be admissible.[4] The statute is not without its proper limitations, however. Admissibility is contingent on a showing of reliability and unavailability in order to safeguard the defendant's constitutional right to confront the witnesses against him. *See State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984). Still another protection is afforded the defendant by the statutory requirement of corroboration. A child's allegations of sexual abuse can have a powerful emotional impact on a jury. Especially when the child–accuser is unavailable to testify, this emotional appeal may

---

[4]Hearsay evidence of a child's descriptions of sexual abuse often does not fall within traditional hearsay exceptions. *See generally* Comment, *Washington's Child Abuse Legislation: Progressive or Over–Aggressive?,* 23 Gonz. L. Rev. 453, 459–64 (1987–1988).

create a special risk of erroneous conviction. By permitting into evidence only those hearsay allegations that can be substantiated by other evidence, the corroboration requirement reduces this risk. *See* Joint Hearings, at 10; Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv. L. Rev. 806, 820 (1985).

 From this understanding of RCW 9A.44.120, we perceive that the determination of whether "there is corroborative evidence of the act" involves a balancing of the statute's goal of making child victim hearsay more readily available as evidence, against the concern that the use of such hearsay should not create too great a risk of an erroneous conviction. The Legislature has offered no specific guidance on how this balance is to be struck. Similarly, we feel it unwise to suggest any hard and fast rules. The determination must proceed case by case, with a view to the competing goals and concerns discussed above.

Certainly the best sort of corroborative evidence would be direct physical or testimonial evidence of the abuse. *See, e.g., State v. Justiniano*, 48 Wn. App. 572, 581, 740 P.2d 872 (1987) (eyewitness testimony to abuse); *State v. Gitchel*, 41 Wn. App. 820, 828, 706 P.2d 1091 (medical evidence of abuse), *review denied*, 105 Wn.2d 1003 (1985); *cf. State v. Frey*, 43 Wn. App. 605, 718 P.2d 846 (1986) (confession); Joint Hearings, at 10 (same). Fairly commonly, however, such direct evidence is not available.[5] Thus, evidence that is only indirectly corroborative must be deemed sufficient in many cases. *See, e.g., State v. Hunt*, 48 Wn. App. 840, 848–50, 741 P.2d 566 (child–victim's precocious knowledge of sexual activity), *review denied*, 109 Wn.2d 1014 (1987); *State v. Robinson*, 44 Wn. App. 611, 621, 722 P.2d 1379 (semen stain on child's blanket), *review denied*,

---

[5]The nonviolent nature of the acts in which Jones allegedly involved Sonja, and Sonja's apparent compliance with her father's directions, are characteristic to cases of child abuse and help explain the lack of direct corroborative evidence in such cases. *See* Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum. L. Rev. 1745, 1749–50 (1983).

107 Wn.2d 1009 (1986); *State v. Gitchel, supra* at 828 (child's nightmares); *see also State v. Petry,* 524 N.E.2d 1293, 1300 (Ind. Ct. App. 1988) (psychological evidence); *State v. Spronk,* 379 N.W.2d 312, 313 (S.D. 1985) (same). The statute's essential purposes should not be defeated by a stubborn insistence on corroboration that is impossible to obtain.

The hearsay statements offered in this case allege basically three acts of abuse, each of which must be separately corroborated under the statute. First is the allegation that Jones fingered Sonja's vagina. Second is the assertion that Jones had Sonja sit on his lap while he masturbated. The final act involves the sexual practice of urolagnia.

The State has taken no specific exception to the trial court's finding of insufficient corroborative evidence with respect to the first two acts of abuse.[6] Out of proper deference for the trial court's judgment,[7] therefore, and in light of the absence of articulated reasons why the judgment should be overturned, we could affirm the inadmissibility of these hearsay statements. However, since we are ordering the prosecution to proceed on the hearsay evidence of Sonja's urolagnial experiences, we find it efficient for the trial court to reconsider the admissibility of the other hearsay statements as well. This will give the parties and the court the opportunity to evaluate the admissibility of these statements in light of the precepts and holdings of this

---

[6]The State's appellate briefs focus exclusively on the corroborative value of the evidence of Jones' prior urolagnial experiences. This evidence, though corroborative of Sonja's descriptions of acts of urolagnia she experienced with Jones (see discussion below), does not corroborate the other acts of sexual contact Sonja alleges.

[7]As with rulings on the admissibility of evidence generally, the standard of review for a trial court's determination of corroboration under RCW 9A.44.120 is abuse of discretion. *See Caruso v. Local Union 690, Int'l Bhd. of Teamsters,* 107 Wn.2d 524, 535, 730 P.2d 1299, *cert. denied,* 484 U.S. 815 (1987); *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 76–77, 684 P.2d 692 (1984); *see also State v. Petry,* 524 N.E.2d 1293, 1296 (Ind. Ct. App. 1988).

and other recently decided cases. *See, e.g., State v. Hunt, supra.*[8]

■ As for the acts of urolagnia, we find corroboration both in the evidence that Jones enjoyed this unusual sexual practice and in Sonja's precocious knowledge of it. Sonja has described and demonstrated with particularity acts of sexual gratification that even the most imaginative adult might not conceive in a vacuum of personal experience. The record suggests no reason to believe that Sonja learned about such acts in any other way. Compare *State v. Allen,* 157 Ariz. 165, 175, 755 P.2d 1153, 1163 (1988). Thus, the nonassertive aspects of Sonja's statements and demonstrations corroborate those assertive utterances and acts which are properly classified as hearsay. *See State v. Hunt, supra* at 850.

Evidence of Jones' several previous experiences with acts of urolagnia also is corroborative. First, by demonstrating that an adult male might find sexual gratification in having a young girl urinate on him, this evidence lends plausibility to an allegation that might otherwise seem too bizarre to be credible.[9] Second, evidence of Jones' propensity for urolagnia makes easier the inferential rejection of other interpretations of the acts Sonja has related. For example, the fact that Jones enjoys having young girls urinate in his mouth makes Sonja's claim that she did so at his behest more probable than that she did so accidentally while he was bathing or changing her. Finally, by the qualities of Jones' character it demonstrates, this evidence makes more probable the veracity of Sonja's assertion that Jones in fact

---

[8]In particular, the extent to which Sonja's demonstrations for Buck reveal a precocious knowledge of sexual matters might be explored. *See State v. Hunt,* 48 Wn. App. 840, 850, 741 P.2d 566, *review denied,* 109 Wn.2d 1014 (1987).

[9]Of particular relevance in this regard is Jones' request of an adult sexual partner that she urinate on him "like a little girl would do", and his repeated requests of a young girl with whom he had lived to urinate in his mouth.

engaged with her in acts of urolagnia.[10] *See* 1A J. Wigmore, *Evidence* § 55 (1983).

While we find that Sonja's allegation that Jones engaged her in acts of urolagnia has been properly corroborated, we must emphasize the limited scope of our holding. As indicated earlier, the determination of corroboration under RCW 9A.44.120 requires an evaluation of the particular circumstances that obtain in each case. Under the present circumstances, we believe the purposes of the child victim hearsay statute will best be served by allowing Sonja's hearsay statements into evidence.

### III

Jones next asserts, without substantial argument, that admission of the hearsay would violate his right of confrontation as guaranteed by the sixth amendment to the United States Constitution and by article 1, section 22 (amendment 10) of the Washington State Constitution. We disagree.

The facial validity of RCW 9A.44.120 under both the federal and Washington Constitutions was affirmed in *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984). *See also State v. Justiniano,* 48 Wn. App. 572, 582, 740 P.2d 872 (1987); *State v. Frey,* 43 Wn. App. 605, 608–09, 718 P.2d 846 (1986). Jones asks that we reconsider *Ryan*'s analysis of Const. art. 1, § 22 (amend. 10) in light of the factors set forth in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). Not having had the benefit of argument on the several *Gunwall* criteria, we decline to undertake a separate analysis of the state constitutional provision at this time.[11] *See State v. Wethered,* 110 Wn.2d 466, 472, 755

---

[10]The logical relevancy of the evidence is not, of course, determinative of its admissibility at Jones' trial. *See* ER 404(b). As noted above, we express no opinion on the evidence's admissibility.

[11]Jones' briefs offered no analysis of the six *Gunwall* factors, and at oral argument counsel summarily discussed only the first two of them, noting textual differences between the state and federal constitutional provisions protecting the right of confrontation. Textual distinctiveness alone is insufficient justification for

P.2d 797 (1988); *State v. Worrell,* 111 Wn.2d 537, 539 n.1, 761 P.2d 56 (1988).

We similarly reject Jones' contention that RCW 9A.44-.120 is unconstitutional as applied in this case. A proper challenge would assail the trial court's findings of unavailability and reliability. *See State v. Ryan, supra* at 170–77; *State v. Robinson, supra* at 615–21; *State v. Frey, supra* at 610–11. Jones has not directly criticized either of these findings.

In any event, the trial court's determinations appear to be sustainable. The trial court expressly found Sonja incapable of testifying. This finding, which "will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion", *Justiniano,* at 578; *see Gitchel,* at 824, 826, provides a sufficient basis for the court's conclusion that Sonja was "unavailable" to testify within the meaning of RCW 9A.44.120 and the Sixth Amendment. *See State v. John Doe,* 105 Wn.2d 889, 895, 719 P.2d 554 (1986); *State v. Justiniano, supra* at 577–79; *State v. Robinson, supra* at 616–20; *State v. Gitchel, supra* at 825–26.

The trial court's finding of reliability is tested against the same abuse of discretion standard, *Justiniano,* at 579–80, and similarly should be sustained. The court's formal findings reflect conscious application of the nine factors iterated in *Ryan* for assessing reliability. Jones has demonstrated no abuse of discretion in this application.

The trial court's dismissal of the charges against Jones is reversed, and the case is remanded for further proceedings consistent with this opinion.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, and SMITH, JJ., concur.

---

reliance on the state constitution as an independent ground for decision. *See State v. Reece,* 110 Wn.2d 766, 778, 757 P.2d 947 (1988).