[No. 10358-7-III.   Division Three.   August 1, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS T. SWANSON, *Appellant.*

---

*Rick L. Hansen* and *Rakow & Hansen,* for appellant.

*Gerald Matosich, Prosecuting Attorney,* and *Richard L. Walker, Deputy,* for respondent.

THOMPSON, J. — Douglas T Swanson appeals his bench trial conviction for statutory rape. He challenges the admission of the hearsay statements of the 2-year-old victim. We affirm.

In the fall of 1988, allegations of sexual misconduct involving children were made against Mr. Swanson. When Michelle G. heard these allegations, she became concerned. In late 1987 and in early 1988, Barbara Swanson, Mr. Swanson's wife, had baby-sat Michelle G.'s then 2-year-old daughter, Miriam, at the Swanson home when the child's regular sitter was unavailable. Mrs. G. and her husband, Tony, contacted the Klickitat County Sheriff's Office and were referred to Detective Sharon Krause.

Mrs. G. told Detective Krause that Miriam did not want to go back to the Swansons' after she had stayed there. At the time, Mrs. G. attributed this reaction to the fact Miriam had talked about the Swanson boys being rough. Miriam had also asked questions such as, "Why are girls different than boys?", had begun touching herself, and complained her genitals hurt. She was treated for a yeast infection. Mrs. G. remembered Mrs. Swanson told her Miriam had taken long naps at the Swanson home, and Mr. Swanson had sat with her on occasion when Mrs. Swanson had to be away from the residence.

Detective Krause advised Mrs. G. that asking Miriam leading questions could lead to credibility problems. Mrs. G. assured her that the only conversations she had had with Miriam regarding the Swansons had occurred when Miriam had brought the subject up. The G.'s decided to allow Detective Krause to interview Miriam.

The interview took place on December 13, 1988, with just Miriam and Detective Krause present. Detective Krause took handwritten notes during the interview, which she later referred to in typing a more detailed description of what transpired.

During the December 13 interview and a second interview on December 22, Miriam evidenced a precocious knowledge about various sexual practices and acts which Mr. Swanson allegedly committed upon her. She used anatomically correct dolls to describe what she stated happened to her. After the interviews, Miriam also made similar statements to her mother.

On January 4, 1989, an information was filed in Klickitat County, charging Mr. Swanson with the statutory rape of Miriam "on or about March 30, 1988." In July 1989, the State amended the information to expand the time period in which the rape allegedly occurred to August 1987 to April 1, 1988. This time period was based upon the dates of the checks with which Mrs. G. had paid Mrs. Swanson for baby-sitting. Her records showed she wrote checks to Mrs. Swanson on November 11, 12, and 13, 1987, December 30, 1987, February 26, March 30 and April 1, 1988. The information also contained 10 additional counts involving children other than Miriam: two counts of indecent liberties, two counts of child molestation, one count of communication with a minor for immoral purposes, and five counts of indecent exposure.

On March 28, 1989, the court conducted a hearing to determine the competency of Miriam and two other young girls to testify. After Miriam took the stand, the State withdrew her as a witness because it was clear she was not competent.

During the March 28 hearing, the State did not argue that Miriam's hearsay statements to Detective Krause were corroborated, so as to be admissible pursuant to former RCW 9A.44.120. That statute provides:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circum-

stances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: *Provided*, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

On May 4, 1989, the Supreme Court filed an opinion in *State v. Jones*, 112 Wn.2d 488, 772 P.2d 496 (1989), which dealt with the issue of corroboration under the foregoing statute. On May 16, the State moved to reopen the hearing, based on what it termed "new law" in *Jones.*

Mr. Swanson opposed the motion, arguing that the evidence of corroboration which the State wanted to introduce at a second hearing was evidence it could have presented at the first hearing. In addition, a new hearing would necessitate a continuance of the trial. Based on the State's argument, the court granted the motion to reopen the hearing, and it continued the May 16 trial date to June 5. Subsequently, the trial date was moved to July 24, because Mr. Swanson's expert was unavailable on June 5.

The second hearing was held on May 24, 1989. Detective Krause detailed Miriam's statements during the two interviews. Miriam's parents testified about behavioral changes they had noticed in their daughter around the time Mrs. Swanson baby-sat her. Mr. G. told the court Miriam had a hard time going to sleep; she cried a lot; she began playing with her genitals; her attention span shortened; her attitude toward men, including himself, changed; and she was very anxious about going to the Swansons'. Mrs. G. confirmed what her husband had noticed. She described Miriam crying hysterically to the point of throwing up. Mrs. G. also stated Miriam complained about her genitals hurting. A doctor treated her for a yeast infection.

Cheryl Hall, a mental health counselor who met with Miriam on January 10, 1989, also testified. She observed Miriam draw a picture, label it "Doug", and punch holes

in the picture. Miriam made a Play Doh bed, then pretended to hide the bed from Mr. Swanson.

In a memorandum opinion, the court held Miriam's hearsay statements were admissible under RCW 9A.44-.120. Mr. Swanson was found guilty of the statutory rape of Miriam and three other charges involving other children.

Did the trial court abuse its discretion when it determined Miriam's hearsay statements were admissible under RCW 9A.44.120?[1] Mr. Swanson contends the circumstances surrounding Miriam's statements suggest they are unreliable. Those circumstances include the fact that before she was interviewed, her parents were concerned she had been molested. Mr. Swanson argues there is some indication they may have talked to Miriam about their fears, or Miriam may have become aware of a problem indirectly. Detective Krause did not record her interview of Miriam. In Mr. Swanson's view, Detective Krause's notes show that she steered the interview toward him. He maintains Miriam's statements raise questions about her ability to distinguish between fact and fiction. They were not spontaneous, but were made in the controlled setting of the interview, several months after the alleged events. Most of the statements were made to Detective Krause alone. Mr. Swanson also asserts the evidence which the court cited as corroborative consisted mainly of the parents' testimony that Miriam's

---

[1] The abuse of discretion standard is the appropriate standard of review under RCW 9A.44.120. *State v. Swan*, 114 Wn.2d 613, 790 P.2d 610 (1990), *cert. denied*, ___ U.S. ___, 112 L. Ed. 2d 772, 111 S. Ct. 752 (1991). *Swan*, at 667, states:

> Appellate courts will carefully review the evidence and testimony presented in evaluating the exclusion and admission of child hearsay statements even under the abuse of discretion standard. Appellate courts also recognize, however, that the trial court is in the best position to make the decisions as to competency and credibility. The abuse of discretion standard, as applied in child hearsay cases, does not ignore the constitutional issues at stake, but acknowledges the obvious, that the trial court is the only court that sees the children and listens to them and to the other witnesses in such a case.

(Footnote omitted.)

behavior changed around the time the Swansons baby-sat her. He argues there was no competent testimony from a mental health expert that the changes were typical of a child who has been abused.

## A
### RELIABILITY

██ Before a child's hearsay statements are admissible under the child victim hearsay statute, RCW 9A.44-.120, the court must find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability". The Supreme Court has set forth nine factors to be applied in determining whether a child's out-of-court statements are reliable. *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). The first five came from *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982): (1) Whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness. The remaining four factors are derived from *Dutton v. Evans*, 400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970). They are: (1) The statement contains no express assertions about past fact; (2) cross examination could not show the declarant's lack of knowledge; (3) the possibility of the declarant's faulty recollection is remote; and (4) the circumstances surrounding the statement are such that there is no reason to suppose the declarant misrepresented the defendant's involvement.

In *State v. Swan*, 114 Wn.2d 613, 648, 790 P.2d 610 (1990), *cert. denied*, ___ U.S. ___, 112 L. Ed. 2d 772, 111 S. Ct. 752 (1991), the court noted the *Ryan* factors and concluded:

> In short, reliability does not depend on whether the child is competent to take the witness stand, but on whether the

comments and circumstances surrounding the statement indicate it to be reliable. The trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability.

(Footnotes omitted.) In addition, the court stated, "[i]t is clear that not every factor listed in *Ryan* needs to be satisfied before a court will find a child's hearsay statements reliable under the child victim hearsay statute, RCW 9A.44.120." *Swan*, at 652. *See also State v. Borland*, 57 Wn. App. 7, 20, 786 P.2d 810, *review denied*, 114 Wn.2d 1026 (1990).

Here, the trial court considered the *Ryan* factors. In its memorandum opinion, it identified each factor, both Mr. Swanson's and the State's contentions relative to each factor, and the court's conclusion. The court determined, overall, the statements were reliable. We find no abuse of discretion.

■ ■ Other courts have found a child victim's explicit descriptions of abuse made the possibility of fabrication remote. " ' "A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of [her] experience." ' " *Swan*, at 648-49. *See Comment, The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis*, 8 J. Juv. L. 59, 67 (1984), *cited in Swan*, at 649, and *State v. Frey*, 43 Wn. App. 605, 610, 718 P.2d 846 (1986). Miriam's descriptions were sufficiently detailed to provide indicia of truthfulness. Although the statements were made during the interview, they were not in response to specific questions posed by Detective Krause. Rather, Detective Krause's questioning was open ended. Miriam's allegations were not limited to the interview context; she also made statements to her mother. Although she made the allegations several months after the events allegedly took place, this factor alone is not controlling. *State v. Jackson*, 42 Wn. App. 393, 397, 711 P.2d 1086 (1985).

## B
### CORROBORATION

■ Under the child victim hearsay statute, a child's description of an "act of sexual contact performed with or on the child by another" is admissible as hearsay evidence if "there is corroborative evidence of the act." As noted in *Swan*, at 622 (citing *State v. Jones*, 112 Wn.2d 488, 495, 772 P.2d 496 (1989)): "The determination of whether there is corroborative evidence of the act involves balancing the goal of making child victim hearsay more readily available as evidence against the concern that the use of such hearsay should not create too great a risk of an erroneous conviction." In the usual case of child sexual abuse, there is no direct physical or eyewitness evidence. *Swan.* Thus, to give real effect to the child victim hearsay statute, "the corroboration requirement must reasonably be held to include indirect evidence of abuse." *Swan*, at 623.

In *Jones*, at 495, the court cited the following cases in which indirect evidence of abuse was held sufficient to satisfy the corroboration requirement of RCW 9A.44.120: *State v. Hunt*, 48 Wn. App. 840, 848-50, 741 P.2d 566 (child victim's precocious knowledge of sexual activity), *review denied*, 109 Wn.2d 1014 (1987); *State v. Robinson*, 44 Wn. App. 611, 621, 722 P.2d 1379 (semen stain on child's blanket), *review denied*, 107 Wn.2d 1009 (1986); *State v. Gitchel*, 41 Wn. App. 820, 828, 706 P.2d 1091 (child's nightmares), *review denied*, 105 Wn.2d 1003 (1985); *State v. Petry*, 524 N.E.2d 1293, 1300 (Ind. Ct. App. 1988); *State v. Spronk*, 379 N.W.2d 312, 313 (S.D. 1985) (psychological evidence).

In *Jones*, the court held that the child victim's description of urolagnia was corroboration of the act. The court stated: "The record suggests no reason to believe that Sonja learned about such acts in any other way." *Jones*, at 497. Likewise, *Swan*, at 633, held the victims' descriptions of fellatio, ejaculation, intercourse, and cunnilingus were corroborative of abuse.

*Swan* also held somewhat corroborative the victim's behavior with an anatomically correct doll, even without the benefit of expert interpretation; the victim's complaints that her bottom was sore; and the victim's emotional response to a subsequent medical examination. *Swan*, at 637, 638, 640. The court stated the corroborative value of these pieces of evidence was strengthened when they were viewed together with the victim's precocious knowledge of sexual activity. *Swan*, at 641.

█ Here, the trial court relied upon similar evidence:

The list includes the yeast infection; behavioral changes such as bed wetting, nightmares, crying at bedtime to the point of vomiting; the fear of visiting the Defendant's home; personality changes and conduct toward her mother, i.e. licking her mother's face and her own body parts; the child's conduct with the anatomically correct dolls; and the activities with the therapist Cheryl Hall, particularly the matters concerning spontaneous statements about the penis, and the question asked of how to draw a penis, and her destruction of the playdough bed, together with her attempt to harm the figure she described or labeled "Doug".

The evidence also certainly supports a finding that Miriam's knowledge of sexual activity was precocious. For example, Miriam described incidents of oral sex, something outside the realm of the average 2-year-old's experience. In light of all the foregoing, the court did not abuse its discretion when it held Miriam's statements were sufficiently corroborated.

The conviction for statutory rape is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

GREEN, C.J., and MUNSON, J., concur.