**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Appellant,<br><br>v.<br><br>ROBERT A. CLARK,<br><br>Respondent. | No. 84672-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Robert Clark appeals a criminal conviction, asserting the State violated his constitutional right to a speedy trial, error by the trial court in admitting child hearsay, and lack of statutory authority for a community custody condition requiring payment of victim counseling fees. We affirm Clark's conviction and remand with instructions to strike the challenged community custody condition.

I

On May 29, 2018, Clark, then 33 years old, visited A.W. and her children at their home in Asotin County. At one point, A.W. went to look for her four year old daughter M.W. A.W. saw Clark walking away from his vehicle with his pants and underwear down to his knees. Clark's buttocks and erect penis were exposed. A.W. found M.W. in the back seat of Clark's vehicle bent over on her knees with her pants and underwear down to her ankles. M.W. was crying and told A.W. she was "wet." A.W. took M.W. inside and asked what had happened. M.W. reported,

"I let Uncle Robert touch my butt because he loves me." A.W. asked M.W. to show her, and M.W. pointed to her genital area.

A.W. took M.W. to Tri-State hospital in Clarkston. A.W. called the police while at the hospital. Police arrested Clark. Tri-State told A.W. to take M.W. to Spokane so she could have testing done. A.W. took M.W. to Sacred Heart Hospital in Spokane. A sexual assault kit was collected at Sacred Heart. Monica Martin, an emergency room nurse, conducted the triage and intake. When asked about pain, M.W. said, "Robert," pointed to her vagina and said "my bottom hurts."

Detective Jackie Nichols interviewed A.W. and M.W. Nichols testified M.W. told her

> Robert had touched her bottom. That he had touched her with both his hands and also with his private. She said that Robert had taken his private out, described it as sticking out, that he had touched her privates with it and her bottom and that it had gone inside of her. She told me that it hurt and made her sad.

M.W. told Nichols that when Clark put his private inside of her, "she had told him no and he had said yes." M.W. told Nichols Robert had tried to kiss her on the lips, and that he had kissed her on the foot. Nichols asked M.W. if Clark had said anything, and M.W. told her "when he was carrying her to the truck . . . he said I love you." M.W. told Nichols that Robert put her hands on his private part.

Brittany Wright, a forensic scientist in the DNA (deoxyribonucleic acid) section with the Washington State Patrol Crime Lab, tested the sexual assault kit. Wright located an area of suspected saliva "in the interior rear, just adjacent to the crotch" of M.W.'s underwear. From that she generated a DNA profile that was a mixture consistent with originating from two individuals including both M.W. and

2

Clark. Wright testified it was "2.2 decillion times more likely to observe this profile if it originated from [M.W.] and Robert Clark," than if it originated from M.W. and a different randomly selected individual. Wright also detected male DNA on the vaginal and anal swabs. At Wright's recommendation, forensic scientist Allison Walker performed Y-STR[1] testing of the swabs. The major male contributor matched the Y-STR profile for Clark. Walker testified this profile is "not expected to occur more frequently than one in 47 male individual[s] in the U.S. population."

The court ordered numerous continuances between Clark's arrest in May 2018 and his trial in September 2021.[2] Of these, only two were not requested or joined by Clark. Wash. Court of Appeals oral argument, State v. Clark, No. 84672-8-I (Mar. 14, 2023), at 9 min, 45 sec. to 10 min 04 sec., https://tvw.org/video/division-1-court-of-appeals-2023031385/. Clark's trial was at one point set for April 23-24, 2020. This trial date was stricken when, due to the COVID-19 pandemic, the Washington Supreme Court suspended trials. See Order, No. 257700-B-602, In re Response by Washington State Courts to the Public Health Emergency in Washington State (Wash. Mar. 4, 2020). This suspension was extended until July 6, 2020. See Order, No. 25700-B-631, In re Response by Washington State Courts to the COVID-19 Public Health Emergency (Wash. June 18, 2020). On July 26, 2021, the State requested a trial date continuance because its forensic

---

[1] A "Y-STR" is a short tandem repeat (STR) on the Y-chromosome.

[2] At oral argument, the State represented there had been 35 trial continuances. Wash. Court of Appeals oral argument, State v. Clark, No. 84672-8-I (Mar. 14, 2023), at 9 min, 24 sec. to 9 min 41 sec., https://tvw.org/video/division-1-court-of-appeals-2023031385/. This court has not independently verified this representation, but nothing in Clark's briefing or argument disputes the State's representation. The parties agree there were many continuances.

DNA expert was not available. While Clark did not join this request, he simultaneously requested a continuance on other grounds.

Clark was twice moved from the Asotin County jail. In May 2019, Clark was moved to the State penitentiary in Walla Walla because Clark "and other inmates decided to pop blocks and have contact with female inmates on the other side." This rendered Clark a higher security risk. Clark made his last telephonic appearance from Walla Walla on November 4, 2019. By February 2021, Clark had been moved to the Nez Perce County Adult Detention Center, Idaho, because he assaulted another inmate. Clark's bench trial commenced on September 16, 2021.

A hearing on the admissibility of child hearsay testimony had been held on September 29, 2020. Clark's counsel stated, "I want the Court to be very aware that our objection would be . . . that any of the mother's statements made to Detective Nichols are hearsay. And so, we're not trying to shoehorn hearsay within hearsay of the child." The court found the proposed child hearsay reliable under State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984). The court found "almost, if not all of those factors, do exist in this case." The court also found there was substantial corroboration to support the statements. The court's oral ruling was not reduced to writing.

At trial, the court admitted A.W.'s and Nichols's testimony relating M.W.'s statements to them. M.W. testified that she did not remember much about May 29, 2018. Clark's counsel inquired of M.W. on cross-examination in regard to only a stuffed unicorn and stuffed teddy bear M.W. had with her on the witness stand, and whether M.W. recognized her counselor in the courtroom. Clark's counsel did

4

not inquire into M.W.'s ability to recall the events at issue. The court found M.W. unavailable as a witness. Clark did not object to emergency room nurse Martin's testimony relating M.W.'s statements.

The trial court found Clark guilty of first degree child molestation and first degree rape of a child. The trial court sentenced Clark to an indeterminate sentence of 120 months to life on the child molestation count and 200 months to life on the rape count, and lifetime community custody. The State asked the court to "reserve on the issue of restitution for counseling costs." Restitution is listed as "TBD" on the judgment and sentence. This court's record does not show a restitution hearing occurred. The court imposed a community custody condition requiring Clark to "[p]ay for any fees that may be generated from counseling for [M.W.]." Clark appeals.

II

Clark first argues the State violated his constitutional speedy trial right. We review alleged violations of the right to speedy trial de novo. State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). The right to a speedy trial is protected by the federal and state constitutions. Id. The two are coextensive. Id. If a defendant's right to a speedy trial is violated, the remedy is dismissal of the charges with prejudice. State v. Iniguez, 167 Wn.2d 273, 282, 217 P.3d 768 (2009).

We look to the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) to determine whether a constitutional violation has occurred. Ollivier, 178 Wn.2d at 827. The test is fact-specific and "dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530-31. The

conduct of the prosecution and the defendant are weighed. Ollivier, 178 Wn.2d at 827. We consider nonexclusive factors including the length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. Id. "[T]he defendant ordinarily must establish actual prejudice to the ability to prepare a defense." Id. at 826.

In State v. Shemesh, this court held that a period of 39 months between filing and trial[3] was "not alone so excessive" as to support a finding of prejudicial delay. 187 Wn. App. 136, 145-46, 347 P.3d 1096 (2015). There, the defendant was charged with three counts of first degree rape of a child, two counts of second degree possession of depictions of a minor engaged in sexually explicit conduct, and first degree child molestation. Id. at 139. Shemesh requested nearly every continuance, did not mention a speedy trial violation until nearly three years had passed, and did not demonstrate particularized prejudice because his complaints about jail conditions did not suggest conditions were oppressive. Id. at 146-47. This court held "the overall delay, while long, was reasonable under the circumstances and thus, not constitutionally excessive." Id. at 147.

Here, Clark was arrested on May 29, 2018 and charges were filed on May 30, 2018. Clark's trial began on September 16, 2021. This period of 39 ½ months is sufficient to trigger a speedy trial analysis. Ollivier, 178 Wn.2d at 827-28. We therefore apply the Barker factors.

---

[3] From charges filed in August 2009 to trial commencing in November 2012. Shemesh, 187 Wn. App. at 139, 143.

6

The length of delay before Clark's trial does not weigh towards finding his speedy trial rights were violated because Clark requested or joined the great majority of continuances. As in Ollivier, here, "the length of delay was reasonably necessary for defense preparation and weighs against the defendant." 178 Wn.2d at 831.

While Clark argues the State's decision to incarcerate him "at remote locations far from his attorneys substantially contributed to his counsels' inability to confer with him," Clark does not show any delay was the result of any inability by his counsel to communicate with him. Clark presents no factual basis countering the State's assertion that his relocations were the result of his own misconduct. Because Clark does not show his incarceration in Walla Walla or Nez Perce County, Idaho contributed to any delay, the reason for the delay weighs against finding Clark's speedy trial right was violated.

Clark argues he first asserted his speedy trial right during a motion hearing on January 25, 2021. At that hearing, Clark's counsel requested trial be continued to March 25, 2021, to secure materials from an expert. Clark asked, "How's my speedy trial calculated into that?" The parties agreed on a trial date after considering Clark's speedy trial period under CrR 3.3(b)(1)(i).[4] But on March 1, 2021, a new attorney appeared for Clark and moved to continue that trial date to allow time to prepare for trial. After more delays including Clark's counsel referencing "challenging" communication with Clark (without attributing the problem to Clark's location), on July 26, 2021, Clark presented a motion to

---

[4] Clark does not assert a violation of CrR 3.3 on appeal.

7

continue trial so that recently appointed counsel could file a motion to dismiss for violation of the time for trial rules. This court's record does not show such a motion was filed. That Clark requested or agreed to the majority of the delays weighs against concluding he asserted his constitutional right to a speedy trial, and as a result this factor also weighs against finding that right was violated.

Finally, Clark argues he was prejudiced because M.W. appeared to deny remembering events sufficient to subject her to meaningful cross-examination. Clark had the opportunity to cross-examine M.W. Clark made no inquiry into M.W.'s recall of events. He does not show that M.W. would have testified in more detail at an earlier trial, nor has he shown how M.W.'s testifying to greater detail would have benefitted his defense. And any prejudice fades in light of the DNA evidence indicating Clark had sexual contact with M.W., A.W.'s observations, and reports of M.W.'s statements without objection.

Clark has not demonstrated his right to a speedy trial was violated.

III

Clark next challenges the trial court's admitting A.W.'s and Nichols's testimony describing M.W.'s reports to them. We review a decision to admit child hearsay statements for abuse of discretion. State v. Beadle, 173 Wn.2d 97, 112, 265 P.3d 863 (2011). A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds. Id.

RCW 9A.44.120(1)(a)(i) permits a court to admit "[a] statement not otherwise admissible by statute or court rule," relevant here, if "[i]t is made by a child when under the age of ten describing any act of sexual contact performed

with or on the child by another, describing any attempted act of sexual contact with or on the child by another." The court must find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(1)(b). If the court concludes the child is unavailable as a witness, "such statement may be admitted only if there is corroborative evidence of the act." RCW 9A.44.120(1)(c)(ii).

Clark argues the child hearsay statements were not sufficiently corroborated. In light of the trial court's conducting a pretrial hearing during which it considered the Ryan factors over an objection to child hearsay by Clark, and entertained both counsels' arguments, we interpret the matter as having been sufficiently preserved for review.

When applying the child hearsay statute, "the best sort of corroborative evidence would be direct physical or testimonial evidence of the abuse." State v. Jones, 112 Wn.2d 488, 495, 772 P.2d 496 (1989). "Fairly commonly, however, such direct evidence is not available. Thus, evidence that is only indirectly corroborative must be deemed sufficient in many cases." Id. (footnote omitted) "The statute's essential purposes should not be defeated by a stubborn insistence on corroboration that is impossible to obtain." Id. at 496.

Here, the child hearsay statements were corroborated by A.W.'s testimony that she observed Clark walking away from his vehicle with his pants pulled down and his buttocks and erect penis visible, A.W.'s testimony that she discovered M.W. in the back seat of Clark's vehicle with her pants and underwear pulled down,

and the discovery of Clark's DNA in M.W.'s underwear. The trial court did not err in admitting the child hearsay.

Further, any error would be harmless. "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). A.W.'s direct observations, healthcare professionals' description of M.W.'s reports, and the DNA evidence, render M.W.'s additional reports to A.W. and Nichols relatively less significant.

IV

Last, Clark argues the community custody condition requiring that he pay counseling fees for M.W. was not authorized by statute. This court reviews a trial court's statutory authority to impose a community custody condition de novo. State v. Johnson, 180 Wn. App. 318, 325-26, 327 P.3d 704 (2014).

The State relies on RCW 9.94A.753(3) as providing statutory authority for the challenged community custody condition requiring payment of counseling fees. Section .753 authorizes the court to require restitution, defined as a specific sum of money ordered by the sentencing court to be paid by the offender to the court over a specified period of time as payment of damages. RCW 9.94A.030(43). A sentencing court can order restitution for costs of counseling reasonably related to the offense. RCW 9.94A.753(3). When restitution is ordered, the court must determine the amount of restitution at sentencing or within 180 days of sentencing. RCW 9.94A.753(1). No such determination was made at sentencing or, insofar as our record shows, in a subsequent hearing. In the absence of compliance with

10

RCW 9.94A.753, that statute cannot support a requirement of payment of counseling fees.

We affirm Clark's conviction and remand with instructions to strike from the judgment and sentence the community custody condition for payment of counseling fees.

_Birk, J._

WE CONCUR:

_Díaz, J._          _Hazelrigg, ACJ_