2017 JAN 30 AH 9: 1


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73699-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS STERLING LITTLE, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: January 30, 2017 |
| | ) | |

Cox, J. — Nicholas Little appeals his judgment and sentence based on his six convictions for first degree child molestation. The trial court did not abuse its discretion by excluding other suspect evidence. The trial court properly exercised its discretion by admitting challenged child hearsay statements concerning the molestation. And the trial court did not abuse its discretion either by denying an evidentiary hearing on whether Little's trial counsel prevented him from testifying at trial or in denying his motion for a new trial. The prosecutor committed no misconduct during closing argument. Little's Statement of Additional Grounds for Review does not raise any meritorious issues. We affirm.

Little and the victims' mother in this case dated and eventually lived together with the mother's three daughters—A.M., J.M., and H.M. J.M. and H.M. are twins. A.M. is the eldest daughter. A.M. was ten and the twins were eight during trial.

The twins disclosed to their friend, H.B., that they had been sexually abused. H.B. then told her mother, who reported the matter to child protective services.

A.M., J.M., and H.M. were interviewed by a child protective services investigator, a Seattle police officer, and a child interview specialist. The children later made statements to their mother about the abuse. Two forensic nurse examiners also examined the children.

The State charged Little with six counts of first degree child molestation. A jury found him guilty, as charged, on all counts.

Little moved for a new trial, claiming that his trial counsel prevented him from testifying in his defense at trial. He sought an evidentiary hearing on his motion. The trial court denied an evidentiary hearing and the motion after it reviewed the declaration of Little's trial counsel and other materials. The trial court entered its judgment and sentence in accordance with the jury verdicts.

Little appeals.

## OTHER SUSPECT EVIDENCE

Little first argues that the trial court deprived him of his right to present a defense by excluding "other suspect" evidence. We hold that the court did not

abuse its discretion by granting the State's motion to exclude this proffered evidence.

Criminal defendants have a constitutional right to present a defense under the Sixth Amendment of the United States Constitution and article I, section 22 of Washington's Constitution.[1] But this right is not absolute, and the evidence "a defendant seeks to introduce 'must be of at least minimal relevance.'"[2]

The exclusion of other suspect evidence is a "'specific application'" of the general evidence rule permitting the trial court to exclude evidence.[3] In Washington, "[t]he standard for relevance of other suspect evidence is whether there is evidence 'tending to connect' someone other than the defendant with the crime."[4] This inquiry "'focuse[s] upon whether the evidence offered tends to create a reasonable doubt as to the defendant's guilt, not whether it establishes the guilt of the third party beyond a reasonable doubt.'"[5]

---

[1] State v. Wade, 186 Wn. App. 749, 763, 346 P.3d 838, review denied, 184 Wn.2d 1004 (2015).

[2] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

[3] State v. Franklin, 180 Wn.2d 371, 378, 325 P.3d 159 (2014) (quoting Holmes v. South Carolina, 547 U.S. 319, 327, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)).

[4] Id. at 381 (quoting State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932)).

[5] Id. (emphasis omitted) (quoting Smithart v. State, 988 P.2d 583, 588 (Alaska 1999)).

There must be some combination of facts or circumstances pointing "to a nonspeculative link between the other suspect and the charged crime."[6] The defendant bears the burden to show that the other suspect evidence is admissible.[7]

We review for abuse of discretion a trial court's decision to exclude evidence.[8]

Here, the State moved in limine "to exclude any suggestion" that the children's maternal grandfather abused them. As evidenced in its oral ruling on the State's motion, the trial court applied State v. Franklin.[9] There, the supreme court discussed other suspect evidence and concluded that the trial court improperly excluded other suspect evidence. In that case, Andre Franklin "offered evidence that [another person] had the motive, ability, and opportunity to commit the charged crime, and that [the other person] had personally threatened [the victim] . . . in the past."[10]

The trial court in Little's case correctly applied the Franklin principles in reaching the correct decision to grant the State's motion to exclude the proffered "other suspect" evidence.

---

[6] Id.

[7] State v. Mezquia, 129 Wn. App. 118, 124, 118 P.3d 378 (2005).

[8] State v. Quaale, 182 Wn.2d 191, 196, 340 P.3d 213 (2014).

[9] 180 Wn.2d 371, 325 P.3d 159 (2014).

[10] Id. at 383.

The record shows that H.B., a friend of J.M. and H.M., testified that the twins disclosed to her that they had been sexually abused. H.B. could not remember whether the name the twins used to identify their abuser was "Nick" or "Doug." H.B. stated that she "got [the names] mixed up because [she] didn't know them at all." Doug is Little's father. But he was not the subject of the State's motion. Rather, the victims' maternal grandfather was the subject of this motion.

The children's mother testified that she and the children temporarily lived with the children's maternal grandfather in late 2011 through early 2012. In 2013, the children's maternal grandfather "stayed" with Little, the children, and their mother for a few weeks.

The evidence at the motion hearing included the child protective services intake report. It stated: "'The children live with their mother and her boyfriend and the boyfriend's father, name unknown, who is the alleged perpetrator.'"[11] The report also stated that the perpetrator "'live[d] about one mile from the family in the Alki Beach area off of [A]dmiral [W]ay.'"[12] The record further indicates that the children's maternal grandfather lived at that location. Defense counsel argued that the statements referring to Little's father actually referred to the children's maternal grandfather.

---

[11] Report of Proceedings (September 30, 2014) at 80-81.

[12] Id.

The trial court granted the State's motion in limine to exclude this proffered evidence. In its ruling, the court stated:

> With that, what we have presently . . . established . . . would be [the children's maternal] grandfather's presence for two to three weeks in the family home, and then the disputed evidence about improper labeling and a person residing in Alki or the West Seattle area. With that record, there simply doesn't exist any chain of facts or circumstances. There is mere opportunity. There is not even motive.[13]

We conclude that the trial court did not abuse its discretion in excluding other suspect evidence concerning the children's maternal grandfather. Little's argument focuses on the fact that the children's maternal grandfather lived with them, their mother, and Little at certain periods of time. Little also argues that the children's maternal grandfather lived in a trailer near their home. Finally, Little claims that the report to protective services should be read to refer to the maternal grandfather, despite its plain language.

But these facts are insufficient to satisfy Little's burden to establish a combination of facts or circumstances pointing "to a *nonspeculative* link between the other suspect and the charged crime."[14] As the trial court correctly concluded, these facts establish only opportunity on the part of the maternal grandfather. They do not, as the trial court correctly determined, establish motive or anything else to show something more than mere speculation.

Little argues that the evidence establishes more than a speculative link and relies on the fact that H.B. allegedly identified "Doug" as the twins' abuser.

---

[13] Id. at 112.

[14] Franklin, 180 Wn.2d at 381 (emphasis added).

He then attempts to make a connection between the children's maternal grandfather and Doug, who Little refers to as a "grandfather-like figure" in his appellate briefs. Little essentially argues that the twins mistakenly referred to Doug, when they really meant to refer to their maternal grandfather, as their abuser.

This is mere speculation. As previously stated, H.B. testified that she could not remember whether the abuser was "Nick" or "Doug." Although H.B. may have been mistaken as to whom the twins referred to as their abuser, this fails to establish that the twins identified their maternal grandfather as their abuser. Thus, this does nothing to establish "a *nonspeculative* link between [the children's maternal grandfather] and the charged crime."[15]

## CHILD HEARSAY

Little next argues that the trial court abused its discretion by admitting the children's hearsay statements. There was no abuse of discretion in doing so.

RCW 9A.44.120 governs the admissibility of child hearsay statements and states in relevant part:

> A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm . . . , not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . in the courts of the state of Washington if:
> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

---

[15] Id. (emphasis added).

7

(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness. . . .

A trial court is afforded broad discretion in determining the reliability of a child hearsay statement, as it has the opportunity to observe the child and other witnesses.[16] As previously stated, we review for abuse of discretion a trial court's decision to admit evidence.[17]

In State v. Ryan, the supreme court identified the following nine factors applicable to determining the reliability of a child's out-of-court declarations:

> (1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.[18]

Not every factor must be satisfied.[19] Rather, the factors must be "'substantially met.'"[20]

---

[16] See State v. Swanson, 62 Wn. App. 186, 191 n.1, 813 P.2d 614 (1991).

[17] Quaale, 182 Wn.2d at 196.

[18] State v. Kennealy, 151 Wn. App. 861, 880, 214 P.3d 200 (2009) (citing State v. Ryan, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984)).

[19] State v. Woods, 154 Wn.2d 613, 623, 114 P.3d 1174 (2005) (plurality opinion).

[20] Id. at 623-24 (quoting State v. Swan, 114 Wn.2d 613, 652, 790 P.2d 610 (1990)).

Here, the trial court considered each of the Ryan factors and determined that the children's statements provided sufficient indicia of reliability for admission under RCW 9A.44.120. On appeal, only Ryan factors one, four, five, and nine are at issue. Little specifically challenges the trial court's admission of the children's statements to four people—their mother, H.B., Seattle Police Officer William Askew, and Carolyn Webster, a child interview specialist. Although the trial court admitted some of the children's statements to their mother, the trial court also excluded other statements due to a concern regarding the fourth Ryan factor—spontaneity.

As an initial matter, Little argues that the Ryan factors cannot be applied to the twins' statements to H.B. because she failed to identify which twin made the statement to her. Without citation to authority, Little argues that the Ryan analysis cannot be conducted if the declarant child is not identified. Because Little fails to cite authority to support this argument, we reject it.[21]

*Apparent Motive to Lie About Abuse*

Little argues that he established the children's motive to lie about the abuse. We disagree.

"The critical inquiry is whether the child was being truthful" when he or she made the hearsay statements.[22]

---

[21] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[22] State v. Gribble, 60 Wn. App. 374, 383, 804 P.2d 634 (1991).

Here, the trial court recognized that the twins initially denied abuse to Ana Mejia, a former social worker with child protective services. Mejia interviewed the children and testified to A.M.'s disclosure of sexual abuse.

The court also found that the children "liked" Little and had no motive to lie in light of Little's threats and promises of rewards. Additionally, the trial court determined, based on the victims' mother's testimony, that the children had lied to their mother in simple situations, such as whether they had brushed their teeth or cleaned their rooms. But their mother testified that she had not caught the children in significant lies. The record supports the trial court's decision that the children had no motive to lie about the abuse in the admitted statements.

*Spontaneity*

Little argues that the children's statements were not spontaneous. We disagree.

Statements made in response to questioning are spontaneous so long as the questions are neither leading nor suggestive.[23]

Here, the trial court found that the children's statements were spontaneous. The record shows that the twins voluntarily disclosed their abuse to their friend H.B. because she did not question the twins about their abuse prior to their disclosure. Similarly, the record shows that all three children voluntarily disclosed their abuse to their mother because she did not question the children about their abuse prior to their disclosure. The trial court also found that Carolyn Webster, the child interview specialist, used open-ended questions during her

---

[23] Kennealy, 151 Wn. App. at 883.

interviews with the children. Additionally, the record shows that Officer Askew used open-ended questions during this interview with A.M. The record supports the trial court's decision that the admitted statements were spontaneous.

*Timing and Relationship*

Little argues that the children's statements were unreliable under this factor. We disagree.

This factor focuses on "'the timing of the declaration and the relationship between the declarant and the witness.'"[24] The reliability of a child's statement is likely enhanced when the witness is in a position of trust with the child.[25] But this court has also stated: "As long as there are law enforcement officers or social workers investigating child abuse, . . . a child's statements will almost always be made after professionals become aware of the abuse."[26] This fact does not necessarily lead to diminished reliability of a child's statements, and in some situations, the presence of a social worker or nurse may enhance the statement's reliability.[27]

Here, the trial court found that the relationships between the children and the witnesses involved the children's mother and their confidant, H.B. The relationship also involved professional authority figures.

---

[24] Ryan, 103 Wn.2d at 176 (quoting State v. Parris, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)).

[25] Kennealy, 151 Wn. App. at 884.

[26] State v. Young, 62 Wn. App. 895, 901, 802 P.2d 829 (1991).

[27] See id.; Kennealy, 151 Wn. App. at 884.

There is no dispute that the twins trusted H.B. with their "secret." H.B. told her mom the twins' secret "four or five days" after they told her. H.B.'s mother called child protective services that day to report what H.B. had said.

The record also shows that the children trusted their mother. They disclosed their abuse to her soon after they returned home from their maternal grandmother's care following the CPS investigation.

Additionally, the trial court concluded that the professional authority figure relationships supported the reliability of the children's statements because they "would impress upon the child[ren] that this was a serious situation."

Although Officer Askew was a stranger to A.M., he questioned A.M. the same day that she disclosed the abuse to Mejia, the former social worker. A.M. also suggested that she liked Officer Askew by testifying that she thought he "was pretty cool."

Lastly, Webster, the child interview specialist, was a stranger to the children but interviewed them two days after Officer Askew and Mejia did.

In sum, the children made statements to their mother, a trusted friend, and professional authority figures. The record supports the trial court's decision that the timing of the statements and the relevant relationships between the children and those who received the admitted statements demonstrated the statements' reliability.

*Surrounding Circumstances*

Little argues that the surrounding circumstances indicate that the children's statements were unreliable. We disagree.

This factor focuses on whether the surrounding circumstances indicate that the declarant misrepresented the defendant's involvement.[28]

Here, the trial court carefully analyzed the circumstances surrounding the statements to determine whether they were reliable. The trial court stated: "Looking at overall circumstances, one can consider and should consider the inconsistency of accounts. The statements here are not mirror images of one another; and to the extent that they're not, that goes more to the weight of the evidence and not its admissibility."[29] The trial court also referred to additional circumstances, such as the children's demonstrations of certain actions with Little and the specific words they used.

Although the trial court did not explicitly conclude whether the surrounding circumstances indicated that the children's statements were reliable, the record shows that the surrounding circumstances do not indicate that the children misrepresented Little's involvement.

Overall, the trial court properly applied the Ryan factors to this case and admitted the challenged hearsay statements. This was a proper exercise of discretion.

## MEDICAL TREATMENT HEARSAY EXCEPTION

Little also argues that the trial court abused its discretion by admitting the children's hearsay statements under the medical diagnosis or treatment exception. We disagree.

---

[28] Kennealy, 151 Wn. App. at 880.

[29] Report of Proceedings (October 2, 2014) at 43.

ER 803(a)(4) provides a hearsay exception for statements made for the purpose of medical diagnosis or treatment. This hearsay exception applies to statements that are "'reasonably pertinent to diagnosis or treatment.'"[30] To establish reasonable pertinence under this exception, courts consider two factors: whether "(1) the declarant's motive in making the statement [wa]s to promote treatment, and (2) [whether] the medical professional reasonably relied on the statement" for treatment purposes.[31]

### Statement Purpose

Little argues that the children's statements to a forensic nurse examiner did not satisfy the medical treatment hearsay exception. We disagree.

A declarant's statements are admissible under this exception when the declarant makes statements for a "medical examination for 'a combination' of purposes—medical as well as forensic."[32]

Washington courts also recognize that "it is not per se a requirement that the child victim understand that his or her statement was needed for treatment if the statement has other indicia of reliability."[33] A very young child's statements may be admitted under this exception, even without evidence that the child understood the purpose of her statements, if corroborating evidence supports the

---

[30] State v. Redmond, 150 Wn.2d 489, 496, 78 P.3d 1001 (2003) (quoting ER 803(a)(4)).

[31] State v. Williams, 137 Wn. App. 736, 746, 154 P.3d 322 (2007).

[32] Id.

[33] State v. Ashcraft, 71 Wn. App. 444, 457, 859 P.2d 60 (1993).

hearsay statement and if "it appears unlikely that the child would fabricate the cause of the injury."[34] The following case further discusses this principle.

In State v. Kilgore, Division Two of this court held that the trial court properly admitted a child's statements to a nurse.[35] The appellate court concluded that it could infer that the declarant had a treatment motive "as long as the declarant is not a very young child."[36] The court then "assume[d]" that the child in that case had a treatment motive because the child was "almost 11 years old" when she spoke to the nurse at a hospital.[37]

Additionally, the record in that case demonstrated that the child had a treatment motive. For example, the child explained that she went to the hospital because she had been sexually abused and sought medical advice.[38] The nurse also explained to the child that the purpose of the examination was to ensure that she was healthy.[39] Thus, the court held that the trial court did not abuse its discretion in admitting the child's statements to the nurse.[40]

---

[34] State v. Kilgore, 107 Wn. App. 160, 183, 26 P.3d 308 (2001), aff'd on other grounds, 147 Wn.2d 288, 53 P.3d 974 (2002).

[35] Id.

[36] Id. at 184.

[37] Id. at 183.

[38] Id. at 170, 183 n.26.

[39] Id. at 183 n.26.

[40] Id. at 183-84.

Here, at the motion hearing, the parties discussed the children's medical records from two examinations. Lori Moore, a forensic nurse examiner, first examined the children in April 2013. The records demonstrate that Moore conducted a "limited" physical examination of the children because they "clinche[d] [their] legs together." Under the "Plan" section of these records, Moore stated: "Follow up with [the] Providence Intervention Center . . . in 1-3 days for incomplete genital exam."

Paula Newman-Skomski, a forensic nurse examiner at the Providence Intervention Center, examined the children in May 2013. According to these records, A.M. and J.M. disclosed to Newman-Skomski how and where Little touched them. H.M. responded "No" when Newman-Skomski asked her whether anyone had touched her in certain areas.

At the motion hearing, Little argued that "there [wa]s no basis for following up with the subsequent examination other than a forensic examination." He argued that the records of J.M. and H.M. showed "that there was nothing medically necessary from that point forward." As for A.M., Little argued that the condition identified in the first examination was later determined to be incorrect. Thus, he argued that the statements made during the second examination were inadmissible because "nothing else exist[ed] to cause or to provide reason for this subsequent examination other than a forensic exam."

The trial court admitted the children's statements under the medical treatment hearsay exception, stating:

> So the question there turned on the facts of whether the examinations were bifurcated or whether they were separated, and

16

I believe my examination showed that they were bifurcated; that it was a continuation. Thus, it was all for purposes of medical diagnoses, thus a valid exception under the hearsay prohibition.[41]

The record shows that Little objected below to the admission of the children's statements to Newman-Skomski, the second forensic nurse examiner. But Little's opening appellate brief refers to the trial court's admission of the children's statements to "forensic nurses during their exams" while his reply brief refers to "the forensic nurse" and specifically mentions Newman-Skomski. We take his argument to be directed at Newman-Skomski, the second nurse examiner.

As for the children's statements to Newman-Skomski, we conclude that the trial court did not abuse its discretion in admitting these statements.

As to the first prong of the hearsay exception test, the medical records demonstrate that the children made their statements to promote treatment. At the beginning of Newman-Skomski's evaluation of A.M., Newman-Skomski asked A.M. if A.M. knew why she was there. A.M. responded: "'No, no one told us . . . .'" Newman-Skomski then asked A.M. if she knew what a checkup was, and A.M. responded: "'Those are not scary.'" Newman-Skomski then asked A.M. if she had any "owies or anything that she was concerned about," and A.M. explained an issue with her tooth. Newman-Skomski also explained to A.M. "that part of making sure she was healthy was talking about safety rules . . . ."

Newman-Skomski asked similar questions during her evaluation of H.M. and asked H.M. if she knew why she was there. H.M. responded "'No'" and then

---

[41] Report of Proceedings (October 9, 2014) at 106.

stated: "'Well my mom actually said we have a doctor's appointment, but I don't know.'" Newman-Skomski then told H.M. that she was there for a checkup and asked H.M. if she had any "owies or concerns." H.M. explained an issue with her eyes and ribs. Newman-Skomski similarly explained to H.M. that "part of doing her checkup [was] to make sure that she was healthy and safe . . . ."

Lastly, Newman-Skomski asked similar questions during her evaluation of J.M. and asked J.M. if she knew why she was there. J.M. responded "'I don't know,'" and Newman-Skomski explained to J.M. that she was there for a checkup. J.M. then responded, "'I know that.'" J.M. also explained a scratch on her finger after Newman-Skomski asked about any "owies or concerns." Newman-Skomski similarly explained to J.M. that "part of the checkup was to make sure she was also safe . . . ."

This record demonstrates that the children understood that their statements were made for medical diagnosis or treatment purposes. Newman-Skomski explained to the children that she was conducting a "checkup" and asked them if they had any "owies" or concerns. The children explained their physical issues in response. Thus, the State satisfied the first prong of this hearsay exception test.

As to the second prong of the hearsay exception test, Little does not dispute that Newman-Skomski "reasonably relied on the statement[s]" for treatment purposes."[42]

---

[42] Williams, 137 Wn. App. at 746.

These facts demonstrate that the record supports the trial court's decision to admit the children's statements to Newman-Skomski. There was no abuse of discretion in doing so.

Little argues that Newman-Skomski "focus[ed]" on "gathering evidence" during her examinations and that "treatment of any injuries was a possible benefit." He also argues that the children "had no incentive to be truthful" because they did not seek medical treatment.

But as Division Two of this court concluded in State v. Williams, a declarant's statements are admissible under this exception when the declarant makes statements for a "medical examination for 'a combination' of purposes— medical as well as forensic."[43] This record demonstrates that the children made their statements to Newman-Skomski for examinations for medical and forensic purposes. Thus, the children's statements are admissible under this hearsay exception.

Little attempts to distinguish Williams from this case, arguing that the children "were uninterested in cooperating with medical care." But the court in Williams did not mention the victim's cooperation in its analysis. Moreover, Little fails to cite authority requiring that a declarant cooperate with medical care in order for this hearsay exception to apply.[44]

Lastly, Little argues that Newman-Skomski was not the children's regular medical provider and would not see the children for follow-up appointments. He

_____

[43] 137 Wn. App. 736, 746, 154 P.3d 322 (2007).

[44] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

further argues that the children's statements were inadmissible "[a]bsent this necessary showing." Little cites ER 803(a)(4) to support this argument. But there is nothing in that rule that requires either of these qualifications.

## PROSECUTORIAL MISCONDUCT

Little argues that the prosecutor committed misconduct, depriving him of his right to a fair trial. We hold there was no misconduct.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was both improper and prejudicial.[45]

"In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence."[46] We review alleged prosecutorial misconduct in "the context of the total argument, the issues in the case, the evidence [addressed in the argument], and the instructions given to the jury."[47]

Little argues that the prosecutor committed misconduct during closing argument for two reasons. Neither reason is persuasive.

### Impugning Defense Counsel

Little argues that the prosecutor committed misconduct by impugning defense counsel during closing argument. We disagree.

---

[45] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

[46] State v. Reed, 168 Wn. App. 553, 577, 278 P.3d 203 (2012).

[47] Emery, 174 Wn.2d at 764 n.14.

It is improper for a prosecutor to impugn a defense counsel's integrity or role.[48] But even where a prosecutor's comments are improper, the remarks are not grounds for reversal "'if they were invited or provoked by defense counsel and are in reply to his or her acts and statements.'"[49] The improper remarks constitute grounds for reversal if they "'are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective.'"[50]

For example, in State v. Brown, the prosecutor in rebuttal closing argument described part of the defense's theory of the case as "'ludicrous.'"[51] The supreme court stated: "As an advocate, the prosecuting attorney is entitled to make a fair response to the arguments of defense counsel."[52]

The court then concluded that the prosecutor's characterization of the defense theory as "'ludicrous' was reasonable in light of the evidence."[53] Thus, the court held that this was not misconduct, stating: "The use of the word 'ludicrous' was simply editorial comment by the prosecuting attorney which was a strong, but fair, response to the argument made by the defense."[54]

---

[48] State v. Lindsay, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014).

[49] State v. Gauthier, 189 Wn. App. 30, 38, 354 P.3d 900 (2015), review denied, 185 Wn.2d 1010 (2016) (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

[50] Id. (quoting Russell, 125 Wn.2d at 86).

[51] 132 Wn.2d 529, 565-66, 940 P.2d 546 (1997).

[52] Id. at 566.

[53] Id.

[54] Id.

Here, the prosecutor used the word "cagey" one time in rebuttal closing argument in response to the defense's argument that the children changed their stories. The prosecutor argued:

> [Prosecutor]: And the same principles about human memory and about feeling comfortable when you're talking to people and the content and the circumstances when you're being asked questions, all attribute to changing memories, little details here and there. That's human nature. The Defense, make no mistake about it, is *cagey* with the words, but they're trying to essentially assassinate . . .
> [Defense counsel]: Objection, Your Honor.
> [Prosecutor]: [A.M.'s] character.[55]

The prosecutor's use of the word "cagey" is directed to defense counsel's argument. A dictionary definition of this word includes the words "crafty" or "shrewd."[56] We view the prosecutor's characterization of the defense argument as "simply [an] editorial comment" and a "fair response" to the defense counsel's argument about the children's allegedly changing stories.[57] We do not view this one word in rebuttal as sufficient to constitute misconduct.

Little relies on State v. Thorgerson[58] to support his argument. He specifically argues that the prosecutor's comment in this case "suggests that defense counsel is attempting to intentionally mislead the jury [and] implies [that] defense counsel is withholding information or engaging in trickery." Not so.

---

[55] Report of Proceedings (October 22, 2014) at 100 (emphasis added).

[56] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016), https://www.ahdictionary.com/word/search.html?q=cagey (last visited January 6, 2017).

[57] Brown, 132 Wn.2d at 566.

[58] 172 Wn.2d 438, 258 P.3d 43 (2011).

In <u>Thorgerson</u>, the prosecutor during closing argument accused the defense of engaging in "'sl[e]ight of hand'" tactics and used disparaging terms like "'bogus'" and "'desperation'" to describe the defense.[59] The prosecutor also planned the "'sleight of hand'" argument in advance.[60]

A majority of the supreme court determined that the prosecutor impugned the defense counsel's integrity.[61] The court also determined that the prosecutor "went beyond the bounds of acceptable behavior in disparaging defense counsel" because the definition of "sleight of hand" "implies wrongful deception or even dishonesty in the context of a court proceeding."[62] The court also concluded that the prosecutor's conduct "was ill-intentioned misconduct" because the "sleight of hand" argument was planned in advance.[63] But the court later concluded that the prosecutor's misconduct did not prejudice the jury.[64] Thus, there ultimately was no prosecutorial misconduct in that case.

This case is unlike <u>Thorgerson</u>. Here, the prosecutor did not make three separate disparaging references to defense counsel. Rather, there was one comment that we view as an editorial comment about the defense argument, not counsel. Further, the prosecutor's reference to the defense argument as "cagey"

---

[59] <u>Id.</u> at 450 (alteration in original).

[60] <u>Id.</u>

[61] <u>Id.</u> at 451-52.

[62] <u>Id.</u> at 452.

[63] <u>Id.</u>

[64] <u>Id.</u>

did not disparage defense counsel because the definition of "cagey" does not imply wrongful deception or dishonesty.[65] Finally, we simply disagree with the argument that the use of the word implies something bad about defense counsel. It does not.

Because we conclude there was no misconduct, we need not address the prejudice prong of the prosecutorial misconduct claim.

*Commenting on Right not to Testify*

Little also argues that the prosecutor committed misconduct during closing argument by commenting on Little's failure to testify. We disagree.

The Fifth Amendment bars a prosecutor from commenting on a defendant's failure to testify.[66] Washington courts consider two factors when determining whether a prosecutor impermissibly comments on the defendant's silence: "(1) 'whether the prosecutor manifestly intended the remarks to be a comment on' the defendant's exercise of his right not to testify and (2) whether the jury would 'naturally and necessarily' interpret the statement as a comment on the defendant's silence."[67]

In cases where the prosecutor's "statement does not explicitly refer to the defendant's silence, the court must examine 'the nature of the statement and the

---

[65] See Lindsay, 180 Wn.2d at 433-34.

[66] State v. Barry, 183 Wn.2d 297, 306, 352 P.3d 161 (2015).

[67] Id. at 307 (internal quotation marks omitted) (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

context in which it was offered . . . to determine the presence of error.'"[68]  A prosecutor's statement does not naturally and necessarily refer to the defendant's silence where there is no indication that the jury thought about the defendant's silence or choice not to testify.[69]

Here, after reading both closing arguments, we conclude that the prosecutor's statement did not comment on Little's silence or choice not to testify.

First, defense counsel referred to the children's sexual abuse in a cabin during a trip with numerous people and stated: "It makes no sense that [Little] would have sexually molested a child . . . with people moving in and out of the cabin without any kind of announcement at all and it just showing up." Defense counsel also referred to the testimony of witnesses present at the cabin and their memories of the trip.

In rebuttal closing, the prosecutor did not explicitly refer to Little's failure to testify.  In response to defense counsel's argument, the prosecutor stated:

> By no means were these family members and friends and such lying about the timing of events in [the cabin].  They simply had no way of remembering whether [A.M.] left that [camp] fire for a short slice of time.  We're talking about ten to twenty minutes, folks. The reality is that only *the Defendant and [A.M.]* knew what happened behind that closed bedroom door.[70]

Defense counsel objected to this argument, and the trial court overruled the objection.

---

[68] Id. at 308-09 (alteration in original) (quoting United States v. Elkins, 774 F.2d 530, 537 (1st Cir. 1985)).

[69] See id. at 309.

[70] Report of Proceedings (October 22, 2014) at 94 (emphasis added).

The context of the parties' arguments demonstrates that the prosecutor's statement would not cause the jury to "'naturally and necessarily' interpret the statement as a comment on" Little's failure to testify.[71] Had the prosecutor referred only to Little as having knowledge of what happened, there would have been a problem. But the plain words of the argument also refer to A.M., another witness to what happened. This does not constitute a comment on Little's failure to testify.

Little argues that the prosecutor "directly commented" on Little's failure to testify. The record shows otherwise.

Little also argues that the prosecutor's statement "effectively told the jury that only Mr. Little and A.M. could say what happened, and Mr. Little failed to take the stand." Although this is a reasonable interpretation of the prosecutor's statement, this argument fails to consider the context of the prosecutor's statement, which we must examine "'to determine the presence of error.'"[72] As explained above, reading both parties' closing arguments demonstrates that the prosecutor's statement did not comment on Little's silence or choice not to testify.

**MOTION FOR NEW TRIAL AND EVIDENTIARY HEARING ON TESTIFYING**

Little argues that the trial court erred in denying his motion for a new trial and an evidentiary hearing to establish that his attorney prevented him from testifying. We hold that the court did not abuse its discretion in either respect.

---

[71] Barry, 183 Wn.2d at 307 (internal quotation marks omitted) (quoting Crane, 116 Wn.2d at 331).

[72] Id. at 308 (quoting Elkins, 774 F.2d at 537).

26

CrR 7.5 governs motions for new trials. The rule provides that trial courts may grant a defendant a new trial due to certain "causes" such as jury misconduct or proceeding irregularities.[73]

We review for abuse of discretion a trial court's decision to deny a motion for a new trial.[74]

The United States Constitution recognizes a criminal defendant's right to testify on his or her own behalf.[75] Washington's Constitution also explicitly protects a criminal defendant's right to testify.[76] This fundamental right cannot be abrogated by defense counsel or by the court.[77] Only the defendant has the authority to exercise or waive this right, and any such waiver must be made knowingly, voluntarily, and intelligently.[78]

Washington affords a defendant an evidentiary hearing upon a sufficient showing that his or her attorney actually prevented the defendant from taking the stand.[79] A defendant's "[m]ere allegations . . . that his attorney prevented him from testifying are insufficient to justify reconsideration of the defendant's waiver

---

[73] CrR 7.5(a).

[74] State v. Mohamed, 186 Wn.2d 235, 240-41, 375 P.3d 1068 (2016).

[75] Rock v. Arkansas, 483 U.S. 44, 51-52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); State v. Robinson, 138 Wn.2d 753, 758, 982 P.2d 590 (1999).

[76] Robinson, 138 Wn.2d at 758.

[77] Id.

[78] Id.

[79] Id. at 759.

of the right to testify. Defendants must show some 'particularity' to give their claims sufficient credibility to warrant further investigation."[80] Thus, "[t]he defendant must 'allege specific facts' and must be able to 'demonstrate, from the record, that those specific factual allegations would be credible.'"[81] Once the defendant meets his burden, "he is entitled to an evidentiary hearing on the issue of whether he voluntarily waived the right to testify."[82]

Washington courts must distinguish between situations where the defendant's attorney actually prevented the defendant from taking the stand from situations where the attorney merely advised the defendant against testifying as a matter of trial tactics.[83] "[I]t is entirely appropriate for the attorney to advise and inform the client in making the decision to take the stand."[84] But if a defendant can prove that his or her attorney used coercive tactics to prevent the defendant from testifying, he or she has "unquestionably proven" that the attorney actually prevented the defendant from testifying.[85] For example, an attorney prevents a

---

[80] Id. at 760 (quoting Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991)).

[81] Id. (internal quotation marks omitted) (quoting Passos-Paternina v. United States, 12 F. Supp. 2d 231, 239 (D.P.R. 1998), aff'd, 201 F.3d 428 (1st Cir. 1999)).

[82] Id.

[83] Id. at 763.

[84] Id.

[85] Id. at 762.

defendant from testifying when the attorney threatens to withdraw unless the defendant agrees not to take the stand.[86]

To establish that the "attorney actually prevented the defendant from testifying, the defendant must prove that the attorney refused to allow him to testify in the face of the defendant's unequivocal demands that he be allowed to do so."[87] In the absence of such demands by the defendant, Washington courts "will presume that the defendant elected not to take the stand upon the advice of counsel."[88]

Here, there is no credible evidence to show that Little's attorney prevented him from testifying. Thus, an evidentiary hearing was unnecessary. The court did not abuse its discretion in denying Little's motion on the record before this court.

After the defense rested, the State asked the court to address Little in a colloquy regarding his right to testify. The following exchange occurred:

> [PROSECUTOR]: So because of what I'm hearing from [defense counsel], I take his word at face value, and where we are right now, I think it's just critical that the [c]ourt makes sure that Mr. Little['s waiver] is knowingly and voluntarily.
> [TRIAL COURT]: What I would feel comfortable with is asking his attorney. [Defense counsel], if you would address, generally, whether you believe it's the case that your client understands his applicable constitutional rights?
> [DEFENSE COUNSEL]: I, in fact, do believe that. I believe that he understands his right to counsel, and this is a decision that—I won't go into the details of it, but he's been apprised as the [c]ourt would

---

[86] Id.

[87] Id. at 764.

[88] Id.

imagine competent counsel would do, and I hope I've been competent.

[TRIAL COURT]: And do you believe it is clear to your client that he has the absolute right to testify and the absolute right to not testify[?]

[DEFENSE COUNSEL]: Yes, Your Honor.[89]

Soon after, the court had the following discussion with Little:

[TRIAL COURT]: First, Mr. Little, do you have any questions of me, any questions of the [c]ourt regarding what your attorney addressed earlier; that is, your right to testify absolutely and your right not to testify?

THE DEFENDANT: Not at all, Your Honor.

[TRIAL COURT]: All right. Thank you.[90]

After the jury entered its verdict, Little moved for a new trial. Defense counsel submitted a declaration supporting the motion and explained that he and the prosecutor "became aware that [Little] had a very strong odor of alcohol about him." Counsel also described two incidences of Little's inappropriate behavior that day and explained that the events "raise[d] a serious question as to whether the defendant was in a position of making a competent decision whether to testify in his own defense." Counsel later filed a motion to withdraw.

The trial court granted counsel's motion to withdraw, and Little obtained new counsel.

In March 2015, Little submitted a declaration and described his consumption of alcohol the night before and the morning of his court appearance. He declared that he expressed his desire to testify to defense counsel and that counsel responded: "'I cannot put you on.'" Little also referred to a note he gave

---

[89] Report of Proceedings (October 21, 2014) at 83-84.

[90] Id. at 88.

counsel during trial, which stated: "I think it'd be wise for me to get on the stand. I just wish I could tell the whole story."[91]

Little further described what counsel had told him during their discussion, stating:

He told me that there was a possibility that the jury might smell the alcohol or think I was drunk. He further told me that the [c]ourt might hold me in contempt or revoke my bond if it realized that I smelled so strongly of alcohol. [Counsel] never discussed with me the possibility of requesting a recess or continuance so that I could testify at some point in the future.[92]

Lastly, Little explained his reasons for not testifying, stating:

The consideration of getting in[to] trouble with the court or having the jury believe I was intoxicated or hung over were a substantial part of my decision not to object when [counsel] told the [c]ourt that I would not be testifying. Had I known that it would have been possible to testify at some later time when I did not appear hung over or smell of alcohol, I would have demanded that [counsel] pursue that option.[93]

In April 2015, Little moved for an evidentiary hearing to resolve the factual issues underlying his motion for a new trial—specifically, whether counsel prevented him from testifying.

In the State's response to Little's motion for an evidentiary hearing, it attached transcripts of Little's telephone calls from jail and two declarations from original defense counsel.

---

[91] Clerk's Papers at 307.

[92] Id. at 188.

[93] Id.

31

In his declarations, counsel explained his interpretation of his conversations with Little. Counsel stated: "It was understood that Mr. Little's decision to testify would be made during the trial after the State finished presenting its case in chief."[94] Additionally, counsel described Little's failure to appear at two of their three scheduled meetings to prepare his testimony. Little also failed to call counsel as scheduled and failed to return counsel's calls regarding the testimony preparation meetings. Counsel believed that Little "was ill-prepared to testify" and told Little: "I don't see how I can put you on."

Counsel further stated that he advised Little that it was his right and decision to testify and did not recall Little stating that he wanted to testify. Counsel "assertively told" Little "that it would be a really, really bad decision if he decided to testify." Counsel also declared: "I never told Mr. Little that he could not testify. I never made any promises or threats to Mr. Little in order to persuade him one way or the other about his right and decision to testify."[95] Additionally, counsel acknowledged that he did not discuss with Little "the possibility of requesting a recess or continuance of the defense case-in-chief so that he may testify without the risk of the jury smelling alcohol on [him]."[96]

In one of Little's jail telephone calls, he referred to counsel and stated:

I would be okay with a mistrial and retrial for sure this time knowing that the pros, or the judge, or the jury's gonna most likely convict I will definitely get on the stand. I thought maybe that there would be reasonable doubt in this case and [counsel] advised me not to get

---

[94] Id. at 302.

[95] Id. at 305.

[96] Id. at 213.

on the stand so [I] didn't. But had I known that there would have been this, if this was gonna be, if . . . I'd [] known this was gonna be the outcome or had even the slightest inclination that this was gonna be the outcome I for sure would have been put on the stand. I would have been like yes I wanna go on the stand you know.[97]

In another phone call, Little stated:

I told him the whole time . . . I wanna go up there and I wanna share my piece. But at the same time its like if I'm gonna be attacked by the prosecutor and it's gonna hurt me I don't wanna do that. He was like oh yeah you're not going up there then.[98]

Little also stated:

[H]e's trying to say that I wasn't competent to get on the stand and testify on that day because I was drunk and that's true I guess to a certain extent. But it's, also, because he advised me not to . . . for all the . . . throughout the whole entire course of the trial . . . .[99]

The trial court determined that the record did not establish "as probably true that Defendant demanded to testify, nor that [counsel] prevented or refused any such demand."[100] It also found that Little's claims and credibility were "seriously undermined by his post-verdict statements captured in telephone calls."[101] Thus, the trial court denied Little's motions for an evidentiary hearing and a new trial.

The record on appeal shows that Little's claims were simply not credible in view of the record before the trial court. Little was present when counsel

---

[97] Id. at 108.

[98] Id. at 332.

[99] Id. at 368.

[100] Id. at 407.

[101] Id.

33

represented to the court that Little understood his right to testify and chose not to exercise it. Shortly after, the trial judge asked Little if he had any questions to which Little replied in the negative. If he had questioned the representations his counsel made to the court at that time, he could have raised the issue when invited to do so by the court. He did not.

Moreover, Little's post verdict statements captured on his phone calls from jail undermine the argument he now makes on appeal. Accordingly, he has failed in his burden to show either a right to an evidentiary hearing or the trial court's abuse of discretion in denying his motion for a new trial.

## STATEMENT OF ADDITIONAL GROUNDS

Little raises at least 15 numbered grounds for review in his Statement of Additional Grounds of over 50 pages. This statement far exceeds the permissible limits specified in RAP 10.10(b). Accordingly, we limit our review to the materials that are permitted by this rule, no more.

Little's first, fourth, fifth, eighth, ninth, tenth, twelfth, and thirteenth claims were already addressed in counsel's briefing on Little's behalf. We do not address them again here.

Little's second claim is an appeal of a standard range sentence. Appeal of such sentences is not generally allowed.[102] There is nothing here to suggest that we should depart from that general rule.

---

[102] State v. Osman, 157 Wn.2d 474, 481, 139 P.3d 334 (2006); see also RCW 9.94A.585(1).

His third claim of error that the trial judge "swamp[ed] a prior sexual abuse report" is insufficient to merit review. Accordingly, we do not address this any further.

The sixth and seventh claims, challenging probable cause on the basis of alleged perjury, lacks sufficient support in this record. Accordingly, we do not further address these claims. "The appropriate means of raising matters outside our record is through the filing of a personal restraint petition."[103]

The eleventh claim also lacks sufficient clarity to warrant review.

Lastly, the fourteenth and fifteenth claims focus on the alleged lack of sufficient evidence to support the convictions. Applying the standards of State v. Green[104] to this record, we conclude that the jury's verdicts are supported by substantial evidence in this record.

## COSTS

Little argues that appellate costs should not be assessed against him should he lose. We agree.

RCW 10.73.160(1) gives appellate courts discretion to decline to impose appellate costs on appeal.[105] Under this court's recent opinion in State v.

---

[103] State v. Hart, 188 Wn. App. 453, 466, 353 P.3d 253 (2015).

[104] 94 Wn.2d 216, 616 P.2d 628 (1980) (plurality opinion).

[105] State v. Nolan, 141 Wn.2d 620, 629, 8 P.3d 300 (2000).

<u>Sinclair</u>, the issue of appellate costs is to be decided by the panel that renders the decision.[106]

Here, shortly after the trial court entered the judgment and sentence, Little filed a motion and declaration seeking appellate review at public expense and appointment of an attorney. The motion stated that Little is indigent and referred to his declaration. Little filed a separate declaration regarding his finances, which shows that he does not have any income or assets. The trial court granted Little's motion and appointed an appellate attorney.

Under <u>Sinclair</u>, we presume that indigency continues unless the record shows otherwise.[107] Nothing in this record overcomes this presumption. Accordingly, an award to the State for appellate costs is inappropriate under these circumstances.

We affirm the Judgment and Sentence and the Order Re Claim of Ineffective Assistance of Counsel. We deny any award of costs of appeal to the State.

Cox, J.

WE CONCUR:

_____

_____

---

[106] <u>See</u> <u>State v. Sinclair</u>, 192 Wn. App. 380, 385, 367 P.3d 612, <u>review denied</u>, 185 Wn.2d 1034 (2016).

[107] <u>Id.</u> at 393.